JANEY HARRIS v. DEWEY PARKER, GLENNON PARKER, AND CHARLIE PARKER

No. 7230SC538

(Filed 28 March 1973)

**1. Husband and Wife § 15— entirety property — effect of conveyance by one spouse on survivor's rights**

Since one of the incidents of an estate by the entireties is that neither the husband nor the wife can defeat the other's right of survivorship in the land by a conveyance or encumbrance to a third party, neither the 1955 conveyance of entireties property by plaintiff's husband to defendants, in which plaintiff did not join, nor defendants' possession of the property under that conveyance could serve to defeat plaintiff's right of survivorship so long as plaintiff's marriage to grantor husband remained undissolved by death or by absolute divorce.

**2. Husband and Wife § 17; Rules of Civil Procedure § 56— summary judgment based on finding of divorce by judge — judge as trier of facts — error**

In an action to recover possession of and establish title to real property plaintiff's motion for summary judgment did not make the trial judge the trier of facts, rather, the motion presented to the trial court only the question whether there was no genuine issue as to any material fact; therefore, entry of summary judgment for plaintiff was improper where it was based on the judge's finding that plaintiff and grantor of the deed in question never obtained any divorce.

**3. Husband and Wife § 17; Rules of Civil Procedure § 33— filing of interrogatories — investigation as to divorce — summary judgment improper**

In an action to recover possession of and establish title to real property where the determining factor was whether plaintiff was divorced from the grantor of the deed in question, the trial court erred in granting summary judgment for plaintiff without first affording defendants an adequate opportunity to complete their discovery proceedings which had been initiated by the filing of interrogatories.

**4. Husband and Wife § 17; Rules of Civil Procedure § 33— interrogatories — reasonableness of information sought**

Defendants' interrogatories containing questions as to plaintiff's residences, marriages, husbands and children sought information reasonably calculated to lead to the discovery of admissible evidence concerning the crucial fact of divorce or no divorce in this case, and entry of summary judgment improperly denied defendants an opportunity to produce evidence favorable to their cause.

APPEAL by defendants from summary judgment dated 12 April 1972 rendered by *Thornburg, Judge,* after hearing in Chambers in Superior Court in JACKSON County.

Harris v. Parker

Civil action to recover possession of and establish title to real property. In her verified complaint plaintiff alleged: She is a resident of South Carolina and defendants are residents of Jackson County, North Carolina. In 1917 she was lawfully married to Ben H. Harris. On 3 November 1917 plaintiff and her said husband bought a tract of land in Jackson County, N. C., and received a warranty deed thereto executed to them as man and wife, which deed was duly recorded in the Jackson County Registry on 3 November 1919 in Deed Book 80 at page 459. (The copy of this deed attached to the complaint as Exhibit A shows it was dated 3 November 1919 and filed for registration 4 December 1919.) About 1925 Ben H. Harris, by cruel and inhuman treatment, forced plaintiff to leave home. Some time thereafter Ben H. Harris, without having first obtained any divorce from plaintiff, entered into a purported marriage and commenced living with a woman who was thereafter known as Lantis Harris. Plaintiff has never obtained a divorce from Ben H. Harris. On 2 July 1955 Ben H. Harris and his purported wife, Lantis Harris, executed a paper writing, a copy of which was attached to the complaint as Exhibit B, purporting to be a warranty deed to defendants describing the same lands as described in Exhibit A. By virtue of this purported deed, which was recorded in Book 210 at page 473, defendants hold possession of and claim an interest in the lands described therein. On 4 December 1970 Ben H. Harris died and plaintiff, his sole surviving legal spouse, became entitled to sole ownership and possession of the lands. Plaintiff prayed judgment that she recover possession of the lands, that defendants' purported deed in Book 210 at page 473 be stricken as a cloud on her title, and that she be declared owner of the lands in fee simple.

Defendants filed answer in which they admitted plaintiff's allegations concerning the deed which was attached to the complaint as Exhibit A, admitted that Ben H. Harris married Lantis Harris, admitted the execution and delivery of the deed to them from Ben H. Harris and Lantis Harris which was attached to the complaint as Exhibit B, and admitted that they hold possession and claim title pursuant thereto. Defendants also admitted the death of Ben H. Harris on 4 December 1970. They alleged they "are without sufficient information or belief to admit or deny" that plaintiff was lawfully married to Ben H. Harris in 1917, or that subsequently Ben married Lantis without having first obtained any divorce from plaintiff, or that plaintiff has never obtained a divorce from Ben. As affirmative de-

fenses defendants alleged that they have adversely possessed the property claimed for more than twenty years and under color of title for more than seven years next preceding the commencement of this action.

On the same date they filed answer, 2 March 1972, defendants filed written interrogatories pursuant to G.S. 1A-1, Rule 33, directed to the plaintiff and calling upon plaintiff to answer under oath some twenty-two questions. Included were questions as to the date of plaintiff's separation from B. H. Harris, her places of residence and dates of occupancy from the date of such separation until the present, the name of any man with whom plaintiff had lived in a state of marriage since her separation from B. H. Harris, the dates and locations of all marriage ceremonies in which plaintiff participated subsequent to her separation from B. H. Harris, the names, dates of birth, and current addresses of any children born to plaintiff, the name of the father of each such child, whether plaintiff had ever been known by the name of Janie Kinley, whether she had ever entered a marriage ceremony with a man named Kinley, and whether she had ever gone by or been known by any names other than Janey Harris or Janie Kinley.

By written notice dated 7 March 1972 plaintiff's counsel notified defendants that plaintiff objected to the interrogatories "for that the same are irrelevant to this cause," and that plaintiff would move before Judge Thornburg at 10 a.m. on 18 March 1972 "for a protective Order on the same, in accordance with the provisions of N. C. Rules of Civil Procedure." By written notice, also dated 7 March 1972, plaintiff notified defendants that plaintiff would also move before Judge Thornburg on 18 March 1972 for summary judgment "upon the pleadings and affidavits to be then submitted." No hearing was held on 18 March 1972 pursuant to these notices. Instead, on that date plaintiff filed affidavits in support of her motion for summary judgment and filed a notice of hearing to be held before Judge Thornburg on 1 April 1972 on plaintiff's motions for summary judgment and "for an Order suppressing defendants' Interrogatories."

In support of her motion for summary judgment, plaintiff filed two affidavits of her own, one by her brother, Wade Harris, and one by a Whitney Massingale. In her own affidavit plaintiff stated that she was lawfully married to Ben Harris on 25 February 1917 in Jackson County, N. C., and attached a certified

certificate of the marriage issued by the Register of Deeds as custodian of the marriage records; that she and Ben Harris separated about 1921 and that Ben never obtained a divorce from her and she never obtained a divorce from him; that in the latter part of 1930 Ben Harris commenced living with a woman named Lantie Broom, who subsequently took on the name of Lantie Harris; that Ben Harris and Lantie Broom were never lawfully married to each other; that plaintiff never joined in the paper writing of 2 July 1955 executed by Ben Harris and his purported wife, Lantie Harris; that plaintiff never conveyed the property to defendants or to any other person; and that she did not know the defendants and had never been notified by them that they were holding the land adversely to her. Wade Harris's affidavit states that his sister, the plaintiff, "never got a divorce from Ben Harris and to the best of my knowledge, Ben Harris never got a divorce from my sister." Massingale's affidavit states that in 1919 he was a neighbor of Ben and Janey Harris and frequently visited in their home; that about 1921 Ben Harris and Janey Harris separated, and that about 1930 "Ben Harris moved back in his house with a female person named Lantie Broom, and they continued to live there."

In opposition to plaintiff's motion for summary judgment, defendants presented copies of certain court records in an action instituted in the Superior Court of Jackson County in December 1935, entitled "John D. Broom v. B. H. Harris and Jane Harris Kinley," brought to foreclose a tax sale certificate issued for unpaid 1933 taxes covering a one-half undivided interest of Jane Harris Kinley in the lands in controversy in the present action. In this tax foreclosure proceeding judgment was entered by default in favor of the plaintiff, and a commissioner was appointed to sell the property covered by the tax sale certificate. A report of sale dated 11 April 1936 was signed by the commissioner and a final decree dated 24 July 1936 was signed by the clerk of superior court directing the commissioner to make and deliver a deed to John D. Broom, the last and highest bidder. No deed from the commissioner appears in the present record. In the 1935 tax foreclosure proceeding service was had upon Jane Harris Kinley by publication, based upon an affidavit dated 16 December 1935 sworn to on that date by the plaintiff, John D. Broom, in which it was stated that Jane Harris Kinley was a nonresident of North Carolina and was a citizen and resident of South Carolina.

Plaintiff's motion for summary judgment was heard by Judge Thornburg upon the verified pleadings, the affidavits presented by plaintiff, and the court records in the tax foreclosure proceeding. By judgment dated 12 April 1972 Judge Thornburg found that defendants failed to respond to plaintiff's motion for summary judgment "by affidavit or otherwise as provided by Rule 56, failing to set forth any specific facts showing that there is a genuine issue for trial, and that there is no genuine issue as to any material fact." Judge Thornburg concluded as a matter of law that upon the death of Ben Harris on 4 December 1970, the plaintiff, as his widow and surviving tenant by the entireties, became the sole owner of the lands in controversy. Summary judgment was entered adjudging that plaintiff is the owner and entitled to immediate possession of said lands. Defendants appealed.

*Louis Wilson and Stedman Hines for plaintiff appellee.*

*Hall, Holt & Haire by Ben Oshel Bridgers for defendant appellants.*

PARKER, Judge.

[1]  Determinative of the rights of the parties is whether plaintiff's marriage to Ben H. Harris was dissolved by an absolute divorce. If it was not, then upon Harris's death in 1970 plaintiff became sole owner of the property as surviving tenant by the entireties, and neither the 1955 conveyance to defendants, in which plaintiff did not join, nor defendants' possession of the property under that conveyance, could serve to defeat plaintiff's right of survivorship.

The common-law estate by the entireties remains unchanged by statute in North Carolina. *Combs v. Combs,* 273 N.C. 462, 160 S.E. 2d 308. "One of the incidents of an estate by the entireties is that neither the husband nor the wife can defeat the other's right of survivorship in the land by a conveyance or encumbrance to a third party." *Council v. Pitt,* 272 N.C. 222, 158 S.E. 2d 34. However, "[d]uring the existence of the tenancy by the entirety, the husband has the absolute and exclusive right to the control, use, possession, rents, income and profits of the lands, and he does not have to account to his wife for the rents and income received from the property." *Board of Architecture v. Lee,* 264 N.C. 602, 142 S.E. 2d 643. Therefore, during the marriage the husband may convey or encumber the property

to the extent of his common-law interest therein, including his rights to the rents, profits, and usufruct of the property, *Bank v. Hall,* 201 N.C. 787, 161 S.E. 484; *Dorsey v. Kirkland,* 177 N.C. 520, 99 S.E. 407, and if he survive, his grantee under a warranty deed may even acquire title by way of estoppel. *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566. Applying these well-established principles to the facts of this case, it is apparent that so long as plaintiff's marriage to Ben H. Harris remained undissolved by death or by absoute divorce, defendants' possession of the property under the 1955 deed could not be adverse to plaintiff's survivorship rights nor could that deed serve to defeat those rights.

[2, 3] In entering summary judgment for plaintiff, the trial court found that "Janey Harris never obtained any divorce from Ben Harris and said Ben Harris never obtained any divorce from Janey Harris." Had the trial court been the trier of the facts, this finding would have ended the matter, for the judgment entered correctly applies the law arising from such a factual determination. Plaintiff's motion for summary judgment, however, did not make the trial judge the trier of the facts. The motion presented to the trial court only the question whether there was no genuine issue as to any material fact. As we view this case, the crucial question presented to this Court by this appeal is whether the trial court was correct under the circumstances of this case in ruling on plaintiff's motion for summary judgment and in determining there was no genuine issue as to any material fact without first affording defendants an adequate opportunity for completing the discovery process which obtaining answers to their interrogatories would have permitted. In our opinion, and we so hold, the trial court committed error in granting summary judgment under the circumstances of this case without first affording defendants an adequate opportunity to complete their discovery proceedings which had been initiated by the filing of interrogatories.

[4] The trial court may have granted summary judgment without first requiring answers to the interrogatories on the theory that no answer to any of the questions therein could have been directly admissible and relevant to raise a genuine issue as to any material fact. The scope of discovery authorized by our Rules of Civil Procedure, however, is not so limited. G.S. 1A-1, Rule 33, provides (in part) that "[i]nterrogatories may relate to any matters which can be inquired into under Rule

26(b)," and Rule 26(b) provides that "[i]t is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." We make no decision on this appeal as to whether defendants are entitled to an answer to each individual question contained in their interrogatories, since the trial court made no rulings in that regard, but we think it apparent that at least some of the information sought "appears reasonably calculated to lead to the discovery of admissible evidence" concerning the crucial fact of divorce or no divorce in this case.

Plaintiff's affidavit indicates that she and Ben Harris separated in 1921 and remained separate and apart until Ben's death in 1970, a period of almost half a century. During at least a part of that period plaintiff was a nonresident of North Carolina, though exactly where she has resided is not disclosed. Investigation as to whether a person has or has not obtained a divorce throughout such a long period of time is at best a formidable task. If it is not known where from time to time the person resided, any significant investigation becomes well-nigh impossible. Obtaining answers to their interrogatories would greatly facilitate defendants' search. Even though their search may produce no evidence favorable to their cause, they are nevertheless entitled to a fair opportunity to try. The entry of the summary judgment under the circumstances of this case denied them that opportunity.

While we rest our decision on the grounds above stated, we note that the presumption recognized in this State in favor of the validity of a second marriage, *Chalmers v. Womack*, 269 N.C. 433, 152 S.E. 2d 505; *Kearney v. Thomas*, 225 N.C. 156, 33 S.E. 2d 871; Annotation, 14 A.L.R. 2d 7, may have been alone sufficient to require submission of this case to the jury.

Reversed and remanded.

Judges VAUGHN and GRAHAM concur.